IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DIMITRI E. GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 116-137 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Dimitri E. George appeals the decision of the Acting Commissioner of Social Security

denying his application for Disability Insurance Benefits ("DIB") under the Social Security

Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the

relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the

Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final

judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff applied for DIB in October of 2011, alleging a disability onset date of August

30, 2009. Tr. ("R."), pp. 249-253. Plaintiff's date last insured ("DLI") for purposes of the DIB

application was June 30, 2012. R. 270. Plaintiff was thirty-two years old on his alleged

_____

[1]The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the
Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d),
the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant.

disability onset date. Plaintiff applied for benefits based on allegations of gunshot wounds to his chest and hip, emotional trauma, chronic pancreatitis, nausea, gastroesophageal reflux, fluctuating blood pressure, arthritis, headaches, carpel tunnel syndrome, numbness in limbs, bowel perforations, nerve stress, and back and knee problems. R. 282. Plaintiff has a high school education, and prior to his alleged disability, Plaintiff had accrued relevant work history as a lumber deliverer, store laborer, furniture deliverer, title clerk, and repo driver. R. 31, 124, 299-306.

The Social Security Administration denied Plaintiff's applications initially, R. 131, 155-57, and on reconsideration, R. 132, 159-61. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 164-65, and a hearing was held on April 2, 2013. R. 40-71. The ALJ issued an unfavorable decision on April 10, 2013, R. 136-45, and Plaintiff appealed this decision to the Appeals Council ("AC"), R. 189-90. On May 21, 2014, the AC vacated the ALJ's unfavorable decision and remanded the case for further proceedings. R. 151-154. The ALJ held a second hearing on November 4, 2014. R. 72-130. At this second hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Steven Davis, a Vocational Expert ("VE"). Id. On January 15, 2015, the ALJ issued the unfavorable decision at issue. R. 20-33.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity from August 9, 2011, the alleged onset date, through June 30, 2012, the date last insured (20 C.F.R. §§ 404.1571 *et seq.*).

2. The claimant has the following severe impairments: depression, anxiety, personality disorder, posttraumatic stress disorder (PTSD), degenerative joint disease of the knees, migraines, status post open reduction internal fixation of the left hip secondary to a gunshot wound, degenerative disc disease of the lumbar spine, and status post gunshot wound to the left chest (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).[2] Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk for at least two hours in an eight-hour workday. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant can frequently balance and occasionally stoop. The claimant cannot kneel, crouch, or crawl. The claimant is also limited to occupations requiring no more than simple routine repetitive tasks, not performed in a fast-paced production environment, involving only simple work-related instructions and decisions, and relatively few workplace changes. In addition, the claimant is further limited to occupations requiring no more than occasional interaction with co-workers and members of the general public. Thus, through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including coder[3] [sic], laminator, and assembler of electrical equipment (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2009, through June 30, 2012 (the date of Plaintiff's date last insured) (20 C.F.R. § 404.1520(g)).

R. 23-34.

When the AC denied Plaintiff's request for review of the ALJ's January 15th decision, R.

---

[2]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[3]Although the ALJ mistakenly identified this job as "coder", the VE properly identified this job as "toater." See R. 126-27. This mistake does not undermine the ALJ's analysis or decision.

1-7, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v.

<u>Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

Plaintiff argues the ALJ (1) improperly concluded Plaintiff's pancreatitis, gastroesophageal reflux disease, and related abdominal pain, were non-severe; (2) improperly concluded Plaintiff's migraines did not meet Listing 11.02 and Plaintiff's ambulatory difficulties did not meet a listing; (3) ignored the medical opinions of treating physician Dr. Liu and treating psychiatrist Dr. Pathiraja; (4) failed to adequately address Plaintiff's need to use an ambulatory device in formulating his RFC; (5) ignored Plaintiff's chronic back pain and asthma; and (6) improperly concluded Plaintiff's migraines did not meet the durational requirements. <u>See</u> Pl.'s Br., pp. 4-8. As explained below, the ALJ considered evidence regarding Plaintiff's chronic pancreatitis and gastroesophageal reflux and properly concluded they were non-severe impairments. In addition, the ALJ considered evidence regarding Listings 1.02, 1.04, and 11.02 and properly concluded Plaintiff's impairments did not meet or medically equal them. Furthermore, the ALJ did not err in his evaluation of the medical opinion evidence, and properly considered Plaintiff's need for an ambulatory device in determining Plaintiff had an RFC to perform sedentary work. Finally, the ALJ properly evaluated Plaintiff's chronic back pain,

asthma, and migraines during his RFC analysis. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

**A.    The ALJ Properly Evaluated the Evidence and Concluded Plaintiff's Chronic Pancreatitis, Gastroesophageal Reflux, and Related Abdominal Pain Were Non-Severe.**

Plaintiff argues the ALJ improperly concluded Plaintiff's chronic pancreatitis, gastroesophageal reflux, and related abdominal pain were non-severe. Pl. Br. 4-5. As discussed herein, the ALJ determination was supported by substantial evidence and Plaintiff's claim fails.

**1.    Step Two Analysis for Severe Impairments.**

A severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a)[4] ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating

---

[4]Effective March 27, 2017, this code section was relocated to 20 C.F.R. § 404.1522, but the substance of the regulation did not change.

that such impairment significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). An impairment diagnosis does not automatically equate to a "severe" impairment. Rather, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005).

### 2. The ALJ Properly Concluded Plaintiff's Chronic Pancreatitis, Abdominal Pain, and Gastroesophageal Reflux Were Non-Severe.

In his Step Two analysis, the ALJ addressed both Plaintiff's pancreatitis and gastroesophageal reflux. R. 23. The ALJ noted that Plaintiff's symptoms for both conditions were being treated conservatively with prescription medication, and by January 2010, Plaintiff's reflux was doing well with no symptoms and he had stopped medication. R. 23, 868, 885-86, 894. Furthermore, a CT scan of Plaintiff's abdomen was normal, revealing no evidence of chronic pancreatitis or pancreatic mass lesions, and an upper right quadrant ultrasound was similarly ordinary. R. 822-23, 918-19. Thus, the ALJ properly reviewed the relevant medical evidence in determining Plaintiff's pancreatitis, gastroesophageal reflux, and associated abdominal pain were non-severe. Plaintiff's conclusory allegation that "the records confirmed significant pain associated with these problems" without pointing to any specific piece of evidence contradicting the ALJ's findings does not undermine the ALJ's well-founded

determination. <u>See</u> Pl. Br. 5.

Moreover, even if the ALJ improperly concluded Plaintiff's chronic pancreatitis, gastroesophageal reflux, and related abdominal pain were non-severe, his Step Two analysis was still proper. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." <u>Burgin v. Comm'r of Soc. Sec.</u>, 420 F. App'x 901, 902 (11th Cir. 2011) (citing <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987)); <u>Heatly v. Comm'r of Soc. Sec.</u>, 382 F. App'x 823, 824 (11th Cir. 2010). Therefore, because he found Plaintiff had numerous severe impairments at Step Two, any omission of a severe condition by the ALJ was harmless. <u>See id.</u>

In sum, the ALJ's determination that Plaintiff's chronic pancreatitis, gastroesophageal reflux, and related abdominal pain were non-severe is supported by substantial evidence.

**B.      The ALJ Properly Evaluated the Evidence and Concluded Plaintiff's Severe Impairments Did Not Meet or Medically Equal Listing 1.02, 1.04, or 11.02.**

Plaintiff argues the ALJ improperly concluded Plaintiff's migraines did not meet Listing 11.02 and Plaintiff's ambulatory difficulties did not meet a listing. Pl. Br. 5-7. As discussed herein, the ALJ determination was supported by substantial evidence and Plaintiff's claim fails.

**1.      Step Three Framework and Standard**

If at step two of the evaluation process an ALJ finds a claimant has an impairment or combination of impairments that is "severe," then at step three the ALJ must determine whether that impairment or combination of impairments meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart B, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and

must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002); see also 20 C.F.R. § 404.1525(a)-(d). Moreover, "to show that his impairment matches a listing, it must meet *all* of the specified medical criteria[;] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

An impairment "medically equals" a listing where "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a); see also Wilkinson o/b/o Wilkinson, 847 F.2d 660, 662 (11th Cir. 1987) ("In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.") (emphasis in original). Furthermore, "[a]ny medical findings in evidence [relating to medical equivalence] must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 404.1526(b). A claimant cannot equal a listing by "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Zebley, 193 U.S. at 531.

The claimant bears the burden of producing medical evidence demonstrating his condition or conditions meet or equal a listed impairment. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

> **2. The ALJ Properly Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Either Listing 1.02 or Listing 1.04.**

At step two of the sequential evaluation process, the ALJ found Plaintiff had the severe impairments of degenerative joint disease of the knees and degenerative disc disease of the lumbar spine. R. 22. However, at step three, the ALJ found Plaintiff's impairments did not meet or equal listing 1.04 for disorders of the spine because "MRI examinations and clinical findings

failed to reveal any significant herniation, stenosis or nerve root impingement." R. 23. Also at step three, the ALJ found Plaintiff's impairments did not meet or equal listing 1.02 because "[t]he medical evidence fails to reveal any significant joint anatomical deformity [and] fails to reflect that this condition resulted in an inability to ambulate effectively, as defined in 1.00B2b." Id.

Plaintiff argues the ALJ incorrectly determined Plaintiff could ambulate effectively as defined by Listing 1.00B. See Pl. Br. 6-7. However, because the ability to ambulate potentially impacts both the Listing 1.02 and Listing 1.04 determination, it is unclear which listing Plaintiff is challenging. Id. Regardless, the ALJ's determination regarding both Listings 1.02 and 1.04 are supported by substantial evidence.

Listing 1.02 requires:

[A m]ajor dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02.

Thus, in order to meet Listing 1.02, Plaintiff must demonstrate not only he is unable to ambulate as defined in 1.00B2b, but also that he has a major dysfunction of a joint. See id. The ALJ correctly found that the medical evidence did not reveal any significant joint anatomical deformity. R. 23. Plaintiff does not challenge this finding. Consequently, even if Plaintiff could

not ambulate effectively under Listing 1.00B, he still did not meet the requirements of Listing 1.02 because he had no significant joint anatomical deformity.

Listing 1.04 requires:

[A d]isorder[] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04.

Consequently, in order to meet Listing 1.04, Plaintiff had to show not only his inability to ambulate as defined in 1.00B2b, but also the presence of lumbar spinal stenosis and nerve root compression. See id. The ALJ correctly found the medical evidence did not reveal any significant herniations, stenosis, or nerve root impingement. R. 23. Plaintiff does not challenge this finding. Thus, even if Plaintiff could not ambulate effectively under Listing 1.00B, he still did not meet the requirements of Listing 1.02 because he had no significant joint anatomical deformity.

In sum, the ALJ's determination that Plaintiff did not meet or medically equal Listings 1.02 and 1.04 is supported by substantial evidence.

### 3. The ALJ Properly Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 11.02.

At step two of the sequential evaluation process, the ALJ found Plaintiff had the severe impairment of migraines. R. 22. However, at step three, the ALJ failed to directly address whether Plaintiff's migraines met a listing. R. 23-24. Plaintiff argues the ALJ should have found his migraines "arose to the standard required of Listing 11.02." Pl. Br. 6.

Listing 11.02 requires a claimant suffer from either generalized tonic-clonic seizure or dyscognitive seizures. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. A generalized tonic-clonic seizure is

> characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.

Id. § 11.00H1a. On the other hand, a dyscognitive seizure is

> characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure.

Id. § 11.00H1b.

Thus, to meet Listing 11.02, a claimant must demonstrate, at a minimum, an alteration of consciousness. Id. None of the symptoms Plaintiff mentions in his brief have generalized tonic-clonic or dyscognitive seizure-like qualities. See Pl. Br. 5-6. Nor do any of the treatment notes regarding Plaintiff's migraines indicate any alteration of consciousness. Indeed, a February 2012 CT scan of the brain came back completely normal. R. 1058. Therefore, Plaintiff clearly does not meet or medically equal the requirements of Listing 11.02.

That the ALJ failed to directly address whether Plaintiff's migraines met a listing does not impact this result. "While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986). Here, the ALJ made an express, albeit concise, finding Plaintiff did not meet any listing. R. 23. Although the ALJ did explain in detail why some of Plaintiff's sever impairments failed to meet a listing, he was not required to cite all the evidence he considered or specify why each severe impairment did not meet a listing.

In sum, the ALJ's determination that Plaintiff did not meet or medically equal Listing 11.02 is supported by substantial evidence.

### C.    Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers

and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R § 404.1567. Here, the ALJ determined Plaintiff has the ability to perform sedentary work. "Sedentary work" is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In determining at step four in the sequential process whether Plaintiff's RFC for a sedentary work would allow him to perform past relevant work, the ALJ consulted the VE in accordance with 20 C.F.R. § 404.1560(b)(2), which provides as follows: "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." The VE identified Plaintiff's past work under the following classifications: (1) lumber carrier and deliverer, semiskilled, classified as light performed at heavy; (2) laborer stores, unskilled, medium performed at heavy; (3) furniture deliverer, semiskilled, classified as very heavy performed at heavy; (4) title clerk, semiskilled, classified as sedentary performed at light; and (5) repo driver, semiskilled, classified

as medium performed at very heavy. R. 124. The VE further opined a hypothetical individual with the Plaintiff's age, education, past job experience, and physical limitations could not perform Plaintiff's past relevant work, but identified toater, laminator, and assembler as other work the hypothetical individual could perform and that exist in Georgia and the national economy. R. 124-27.

### D. The ALJ Properly Weighed the Medical Opinions.

Plaintiff contends the ALJ improperly ignored the medical opinions of Dr. Fengui Liu, Plaintiff's treating general practitioner, and Dr. Ananda Pathiraja, Plaintiff's treating psychiatrist. As discussed herein, the ALJ correctly considered Dr. Liu's and Dr. Pathiraja's opinions in making his RFC determination and his evaluation of their medical opinions is supported by substantial evidence.

### 1. Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical

records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Crawford, 363 F.3d at 1159 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes, was unsupported by the medical evidence, and was based primarily on claimant's subjective complaints); Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Sources that can provide evidence to establish an impairment include licensed physicians, but not physician's assistants. See Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 783-84 (11th Cir. 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, state

agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record.  See id.; Jarett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion); see also 20 C.F.R. § 404.1527(e)(2)(i), (iii).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

### 2. The ALJ Properly Weighed Dr. Liu's Medical Opinion.

Plaintiff claims the ALJ erred by "ignor[ing] the opinion evidence of [Plaintiff's] treating physician, Dr. Fengoi [sic] Liu," in evaluating the severity of Plaintiff's migraines.  Pl. Br. p. 5.  Contrary to Plaintiff's assertion, the ALJ expressly considered Dr. Liu's opinion regarding Plaintiff's migraines and gave it "little weight."  R. 29.

The ALJ explained in detail the reasons for his rejection of Dr. Liu's opinion that Plaintiff's migraines occurred more than once a week, would last several hours, and would interfere with Plaintiff's ability to work a full week.  R. 29, 945.  He cited a normal CT scan and the absence of recurring emergency room or inpatient treatment for migraines.  R. 29, 1058.  He also considered the lack of evidence in Dr. Liu's treatment records for the severity and frequency of migraines Plaintiff reported.  R. 29, 373-900, 999, 1009, 1097-1100.  Indeed, the ALJ specifically noted a statement by Dr. Liu just two months prior to the opinion in which Dr. Liu failed to mention migraines as a condition for which Plaintiff was being treated.  R. 29, 807.  Only after this detailed consideration of Dr. Liu's opinion and its inconsistency with the medical

record and treatment notes did the ALJ properly attribute it little weight. <u>See</u> <u>Crawford</u>, 363 F.3d at 1159.

Accordingly, the ALJ's decision to afford Dr. Liu's opinion little weight was based on its inconsistency with Dr. Liu's own medical records and the objective medical evidence, and thus supported by substantial evidence.

### 3. The ALJ Properly Weighed Dr. Pathiraja's Medical Opinion.

Plaintiff also claims the ALJ "ignore[d] the opinion of [Plaintiff's] treating psychiatrist, Dr. Ananda Pathiraja." Pl. Br. p. 8. As part of the duty to develop a full and fair record, the ALJ must "make clear the weight accorded to the various testimony considered." <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981). As noted above, "[t]he [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." <u>MacGregor</u>, 786 F.2d at 1053. "However, when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." <u>Wright v. Barnhart</u>, 153 F. App'x 678, 684 (11th Cir. 2005).

Here, the ALJ specifically discussed Dr. Pathiraja's findings. R. 27. As an initial matter, the ALJ noted Dr. Pathiraja's treatment notes were from July 23, 2012, after the date last insured. <u>Id.</u>; R. 1096. Despite the notes' untimeliness, he thoroughly discussed the evaluation, noting that Plaintiff did not feel depressed or have any difficulty with appetite, energy or concentration. <u>Id.</u> Furthermore, Plaintiff denied anhedonia or psychomotor symptom and attributed his anxiety to restless sleep. <u>Id.</u> The ALJ even noted Dr. Pathiraja's diagnosis of Plaintiff's PTSD and included it as a severe impairment at step 2. R. 22, 27, 1096.

Moreover, the ALJ incorporated Dr. Pathiraja's well-supported findings in the RFC. The

ALJ specifically stated, "The moderate difficulties in social functioning associated with PTSD and the claimant's preference to avoid crowds was considered in the limitation to no more than occasional interaction with coworkers and members of the public." R. 31. Although he failed to assign Dr. Parathiraja's opinion specific weight, it is clear he thoroughly considered it when formulating Plaintiff's RFC.

In sum, the heart of Plaintiff's argument goes to how the ALJ weighed the evidence, a task beyond this Court's purview. <u>Cornelius</u>, 936 F.2d at 1145. Plaintiff does not validly point to any information in Dr. Pathiraja's findings that were inconsistent with the ALJ's RFC. Thus, contrary to Plaintiff's contention, the ALJ did impliedly assign weight to Dr. Pathiraja's opinion in the context of his discussion of the entirety of the relevant medical evidence and then including Dr. Pathiraja's well-supported findings as limitations in the RFC. <u>See</u> <u>Hardman v. Colvin</u>, No. 3:12-CV-42, 2013 WL 3820694, at *6 (M.D. Ga. July 23, 2013) ("It is clear that the ALJ gave weight to the opinion of [a consultative examiner] as it was made manifest by the ALJ's RFC finding."); <u>Turner v. Comm'r of Soc. Sec.</u>, No. 6:12-cv-937, 2013 WL 5330430, at *4 (M.D. Fla. Sept. 23, 2013) ("Failure to state the weight given to a medical opinion is generally harmless where the opinion at issue does not contradict the ALJ's RFC determination.") (citing <u>Wright</u>, 153 F. App'x at 684)).

**E.      The ALJ Properly Evaluated the Medical Evidence.**

Finally, Plaintiff contends the ALJ failed to adequately address Plaintiff's need to use an ambulatory device in formulating his RFC, ignored Plaintiff's chronic back pain and asthma, and improperly concluded Plaintiff's migraines did not meet the durational requirements. Pl. Br. 5-8. Plaintiff's arguments lack merit because the ALJ properly considered all the relevant medical evidence, and his RFC finding was supported by substantial evidence.

1. **The ALJ Properly Evaluated Plaintiff's Ambulatory Difficulties.**

Plaintiff contends the ALJ did not "adequately address" the "role that [Plaintiff's] ambulatory device serves in his ability to work." Pl. Br. 7. Contrary to Plaintiff's contention, the ALJ discussed Plaintiff's ambulation at length in explaining why he rejected Dr. Liu's opinion that Plaintiff could not walk without an assistive device. R. 29.

Although Dr. Liu indicated on a handicapped parking application that Plaintiff required an ambulatory device, the ALJ explained Dr. Liu completed the form before receiving numerous diagnostic studies reflecting mild to normal findings, including CT and MRI scans. R. 29, 820, 928, 946, 949, 1057, 1226-27. Indeed, on a subsequent visit, Dr. Liu's office refused to give Plaintiff specific limits on how long he could sit, stand, walk, or lift, and advised Plaintiff that he should obtain a function test instead. R. 1013. Moreover, in January 2012, Plaintiff did not use an assistive device during his physical therapy evaluation visit. R. 1052-53. At this same visit, the physical therapists indicated that no braces were issued as it could create dependence and further weakness. Id. Finally, the ALJ noted that even if Plaintiff needed ambulatory assistance during work, the jobs provided by the VE could be performed while using an assistive device. R. 29-30.

Plaintiff contends the ALJ determined he can "perform a light job which requires that he be on his feet 6 of 8 hours per day." Pl. Br. 7. However, the ALJ concluded Plaintiff could *sit* for *six hours* in an eight-hour day and *walk* for *two hours* in an eight-hour day. R. 24 (emphasis added). This RFC finding is consistent with the medical evidence regarding Plaintiff's ambulatory impairments detailed in the ALJ's thorough opinion. R. 26-31.

In sum, the ALJ properly considered Plaintiff's ambulatory abilities in the formulation of Plaintiff's RFC.

### 2. The ALJ Properly Evaluated Plaintiff's Asthma and Chronic Back Pain.

Plaintiff complains the ALJ failed to mention "claimant's asthma which is noted throughout the record" and gave Plaintiff's chronic back pain "only a cursory mention." Pl. Br. 6, 8. Regarding his asthma, the treatment note Plaintiff cites is from 2007, well before his period of disability, and a different treatment note indicates his asthma had been resolved by 2013. R. 696, 1251. Indeed, Plaintiff did not even list asthma on his application as a condition that limited his ability to work. R. 282. Thus, the ALJ correctly did not address Plaintiff's asthma in his RFC determination.

Nor did the ALJ only cursorily consider Plaintiff's back injuries. After noting Plaintiff reported "daily low back pain," the ALJ evaluated Plaintiff's back condition in detail. R. 25-26. The ALJ specifically noted no fracture or spondylosis of the spine, an MRI showing only small central disc extrusion that remained midline, and Plaintiff's repeated refusal to do physical therapy exercises that were uncomfortable. R. 26, 820-21, 934-35. Thus, the ALJ took into account Plaintiff's back condition, along with its associated pain, in his RFC determination, and that determination was supported by substantial evidence.

### 3. The ALJ Properly Concluded Plaintiff's Migraines Did Not Meet the Durational Requirements.

Plaintiff also contends the ALJ "misstat[ed] or misconstrue[ed]" the twelve-month durational requirement for Plaintiff's migraines and as a result determined they "should not be considered." Pl. Br. 5-6. Irrespective of the twelve-month durational requirement, Plaintiff must establish his impairment was disabling *prior* to his date last insured of June 30, 2012, to establish his entitlement to DIB. See 20 F.C.R. § 404.315(a)(3); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). As the ALJ found, Plaintiff failed to do so.

Contrary to Plaintiff's contention, the ALJ considered Plaintiff's migraines in both his RFC analysis and his discussion of Dr. Liu's opinion. R. 27, 29. Indeed, he noted that Plaintiff did not report any problems with migraines until 2012 and a CT scan of Plaintiff's brain came back normal in February 2012. R. 27, 337-900, 999, 1009, 1058, 1097-1100. Consequently, the ALJ found that any evidence of migraines prior to Plaintiff's June 30, 2012, date last insured was minimal and did not require significant physician intervention. Id. Thus, Plaintiff's migraines were not disabling prior to his date last insured as required. See 20 F.C.R. § 404.315(a)(3); Wilson, 284 F.3d at 1226.

In sum, the ALJ properly found that Plaintiff's impairments, including his migraines, were not disabling prior to his DLI, and that determination was supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 19th day of May, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA